UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA        )
                                )
        v.                      )   No. 10-10088-DPW
                                )
LOUIS CLAYTON BARTON            )


             MEMORANDUM IN AID OF SENTENCING AND
             MOTION FOR DOWNWARD DEPARTURE OR VARIANCE

    The defendant Louis Barton, through undersigned counsel, respectfully submits this memorandum to assist the court at sentencing in the above-captioned case.  The sentencing is set for May 16, 2011.  Mr. Barton is being sentenced for the armed robbery of a Citizens Bank branch in Quincy in January 2010 and for the use of a firearm during the commission of the robbery, in violation of 18 U.S.C. §§2113 and 924(c).  Counsel requests the court to impose a sentence in the range of twelve to fifteen years.

    Louis Barton is 53 years old.  He was one of five children, one of whom, Charlie Barton, is deceased.  Louis, his sister Louray, and his brother Charlie all have histories of drug addiction.  His parents' marriage was marked by physical abuse toward each other and their children and open drug use in the home in the presence of the children.  Though Louis was quite intelligent and was probably capable of doing well in school, he began running away from home at age 11, and by about the age of

                                1

15 he was no longer living at home at all.  When he was given chances to attend private schools on scholarship, he squandered the opportunities by being truant; see ¶¶142-144.  A psychiatric evaluation by Dr. Peter Cohen recounts that Louis always believed himself to be a misfit.

Louis Barton's problems with drug addiction began at an extremely early age.  He began drinking hard liquor at age 9, was smoking marijuana by age 11, and was skin-popping heroin by the time he was 12.  He would take any kind of drugs he could get his hands on during his pre-adolescent and adolescent years and often stole his mother's prescription medication from the medicine chest.  He became a full-blown heroin addict by age 18, when he was living in Colorado.  He also developed some degree of depression, described by Dr. Cohen, for which he was treated while at Leavenworth with Paxil[1] and Prozac.[2]

Mr. Barton has an extensive criminal history, and unfortunately his current criminal case is of a piece with a number of his previous violations of the law.  Drug treatment programming after his first federal prison release was ineffective, though records reflect that Mr. Barton made genuine efforts to work through his various stumbling blocks to sobriety; see PSR ¶¶139-141.  After his release from state incarceration in

---

[1]   Generic name is paroxetine.

[2]   Generic name is fluoxetine.

2008, Mr. Barton had hoped for and expected transitional support from prison to the community through a halfway house placement. This did not happen however, and he was released to the street. He did not have adequate support in the community to make the transition from prison successfully. His sister Louray did not have the wherewithal to be very helpful, though she was able to give him a roof over his head for a time. His wife Leah's subsidized housing situation did not allow her to have her husband living under her roof, and given her own drug problems this was not a desirable solution anyway. He did secure work in a Popeyes Restaurant, but he was not able to work very long because of physical infirmities that made it painful for him to stand for hours on end.

One of his doctors prescribed Ritalin for him. This effectively kept Mr. Barton's ADHD in check and he felt better and more in control of himself while on the medicine; it also helped him abstain from heroin use. However, as a result of an apparent misunderstanding or miscommunication between his state probation officer and his prescribing doctor, his Ritalin prescription was discontinued, to Mr. Barton's extreme detriment. Without his Ritalin he quickly relapsed into heroin abuse, and the criminal conduct that gave rise to this case soon followed. Mr. Barton has continued to need mood stabilizing medication since his arrest. Records from his current detention show that he

has been treated with Celexa[3], though not effectively so.

## Results of Current Psychological Testing

Counsel had Mr. Barton evaluated by Dr. Peter Cohen, a psychiatrist, in order to diagnose any mental illness and/or substance dependency, and to render an opinion of Mr. Barton's current dangerousness.[4] Dr. Cohen has concluded that Mr. Barton suffers from ADHD, opioid dependence, and a mood disorder. His childhood home life was marked by physical abuse from both parents; both of his parents beat him regularly, see PSR ¶94, and his father used to beat his mother, even though they did not live together. Louis was a frequent runaway from home by the time he was 13, and once ran away for almost a year, living in New York. He told the presentence report writer that he ran away from home "at least twenty times," and that he usually ran when he had done something that he feared would result in a parental beating.

Dr. Cohen's evaluation documents that Mr. Barton's parents deliberately exposed him to illegal drugs and alcohol at a young age and encouraged him to abuse them. This early exposure to drugs, combined with the complete absence of parental oversight and setting of limits on behavior, likely led to what became a lifelong problem with drug addiction. That Mr. Barton's siblings

---

[3] Generic name is citalopram.

[4] Dr. Cohen's report has already been forwarded to the court and opposing counsel.

also became drug addicts supports the thesis that conditions in the home made it difficult for the Barton children to grow up without becoming drug-involved.  In many ways, these children were doomed from their childhood to marginal lives at best, and at worst to the life that Mr. Barton has in fact lived.

## The 924(c) Sentence

The defendant takes the position that he may only be sentenced to a consecutive five-year sentence on the §924(c) conviction, and not to a seven-year sentence based on an allegation that he brandished the firearm during the commission of this robbery.  The defendant submits that "brandishing" for the purpose of imposing an enhanced mandatory sentence under §924(c)is an element of the offense that must be pleaded in the indictment, and is not a mere sentencing factor that may be found by the sentencing judge by a preponderance of the evidence.  The indictment in this case did not allege that Mr. Barton brandished the firearm in question.  The defendant submits that to the extent that McMillan v. Pennsylvania, 477 U.S. 79 (1986), and Harris v. United States, 536 U.S. 545 (2002), hold that for the purpose of applying the Sixth Amendment, a meaningful distinction exists between a sentencing statute that sets a mandatory minimum sentence based on the presence of a certain fact and a statute that sets a mandatory sentence that is not denominated a mandatory minimum sentence based on the presence of a certain

fact, these cases have both been overruled by United States v. O'Brien, ___ U.S. ___, 130 S.Ct. 2169 (2010).  In O'Brien, the Court held that §924(c)'s provision for a 30-year minimum mandatory sentence for the use of a machine gun had to be interpreted as making the type of weapon used an element of the offense that had to be pled in the indictment and proven to the jury beyond a reasonable doubt.  Justice Kennedy's majority opinion rejected the government's McMillan argument that because the 30-year provision was a only mandatory minimum sentence, and did not raise the offense statutory maximum, Apprendi v. New Jersey[5] did not apply and that the type of gun used was only a sentencing factor.  130 S.Ct. at 2177-2178.  Moreover, the concurring opinions of Justices Stevens and Thomas make clear their view that judicial attempts to distinguish, for Sixth Amendment purposes, mandatory minimum sentences that hinge on the proof of certain facts from increased statutory maximum sentences that hinge on the proof of those same facts, so that issues of pleading and proof might be satisfied differently in each setting, are intellectually dishonest and ought to be swept aside for the sake of consistency.  Both Justices also assert that Harris was wrongly decided at the time. See 130 S.Ct. at 2182-2184.

---

[5]   530 U.S. 466 (2000).

Sentencing Recommendation

Counsel believes that imposing sentence in Mr. Barton's case is difficult, in large part because reasonable people can hold differing opinions on what constitutes a fair and appropriate sentence for this unfortunate man.  On the aggravating side, the offense conduct here was very serious and violent, although no one was actually physically harmed.  Moreover, Mr. Barton has a long history of committing violent crimes.  One might therefore conclude that the only way to protect the public from harm is by incapacitating him with a very long prison sentence.

On the other side, it is clear that Mr. Barton's heroin addiction underlies all of his violent behavior, and that long prison sentences have been completely ineffective in dealing with his addiction.  It has been said that the definition of insanity is doing the same thing over and over and expecting a different result each time.  While counsel is not suggesting that the imposition of a long sentence in this case would be insane,[6] expecting such a sentence to cure Mr. Barton's underlying pathologies and effect a change in his future behavior would be.  After Mr. Barton's most recent release from custody, he was put straight into the community without even the benefit of a halfway house transition.  He was then pulled off the one medication,

---

[6] Indeed, counsel is not asking for a short sentence in this case, her recommendation being in the range of 12 to 15 years.

Ritalin, that controlled his behavior and allowed him to remain abstinent from drug use.  Mr. Barton also presents the classic dual diagnosis case, as there is clear evidence of mental illness in the form of depression and ADHD, both of which he has suffered from since pre-adolescence.  Whether his mental illness was the product of parental abuse and neglect or was merely exacerbated by it probably cannot be figured at this juncture, but surely the deranged state of his childhood largely predestined Mr. Barton to his eventual troubles.  All of this, in counsel's view, makes Mr. Barton less morally blameworthy for his conduct than he might otherwise appear to be.

It is of course possible, with the guideline range being what it is in this case, to impose a sentence that amounts to life imprisonment, given Mr. Barton's mature age.  Counsel is first asking the court not to impose the equivalent of a life sentence.  Counsel suggests that a sentence of between 12 and 15 years' imprisonment satisfies the purposes of sentencing and is appropriately long without being excessively so.  Mr. Barton would emerge from prison in his mid-60's, and could then undertake long-term mental health and drug addiction treatment while on supervised release.  Given his family's inability to provide meaningful material assistance to him in the community, counsel suggests that community confinement after release would play an important part in supporting Mr. Barton's successful

reintegration into society.  Counsel would also recommend that Mr. Barton participate in the RDAP program while in BOP custody.

## Conclusion

For the reasons set forth above, counsel asks this court to impose a sentence in the range of 12 to 15 years' incarceration and to impose community confinement as a condition of a portion of his supervised release.  Counsel also asks that no fine be imposed, as there will be a restitution order in this case and Mr. Barton has no means to pay a fine.

Respectfully submitted,

By his attorney,

/s/ Syrie D. Fried
Syrie D. Fried
   B.B.O. # 555815
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA  02210
(617) 223-8061

## CERTIFICATE OF SERVICE

I, Syrie D. Fried, do hereby certify that the foregoing memorandum was filed electronically via this court's electronic case filing system ("ECF") and was served electronically upon the parties identified in the Notice of Electronic Filing ("NEF") this 16th day of May, 2011.

/s/  Syrie D. Fried